# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 38470 (rem)**

————————————

### UNITED STATES
*Appellee*

**v.**

### Sean J. CHERO
Senior Airman, USAF, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary
*On Remand from*
the United States Court of Appeals for the Armed Forces

Decided 9 January 2017

————————————

*Military Judge:* Christopher M. Schumann.

*Approved sentence:* Dishonorable discharge, confinement for 3 years, forfeiture of all pay and allowances, reduction to E-1, and a reprimand. Sentence adjudged 22 June 2013 by GCM convened at Fairchild Air Force Base, Washington.

*For Appellant:* Major Christopher D. James, USAF.

*For Appellee:* Major Mary Ellen Payne, USAF; and Gerald R. Bruce, Esquire.

Before DREW, J. BROWN, and MINK, *Appellate Military Judges*

Chief Judge DREW delivered the opinion of the Court, in which Senior Judge BROWN and Judge MINK joined.

————————————

### PUBLISHED OPINION OF THE COURT

————————————

DREW, Chief Judge:

A general court-martial composed of officer members convicted Appellant, contrary to his plea, of sexual assault by engaging in sexual intercourse with a

person he knew or reasonably should have known was unconscious or otherwise unaware that the sexual act was occurring, in violation of Article 120(b)(2), UCMJ, 10 U.S.C. § 920(b)(2).[1] The adjudged and approved sentence was a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.

In Appellant's initial appeal to this court, we affirmed the findings and sentence. *United States v. Chero*, ACM 38470 (A.F. Ct. Crim. App. 28 Apr. 2015) (unpub. op.).[2] Our superior court, the United States Court of Appeals for the Armed Forces (CAAF), granted review on the issue of whether the military judge abused his discretion when he concluded Appellant's maximum punishment was a dishonorable discharge, forfeiture of all pay and allowances, and confinement for 30 years. *United States v. Chero*, 75 M.J. 20 (C.A.A.F. 2016). The CAAF affirmed our decision as to the findings but reversed as to the sentence and remanded the case to this court for further consideration in light of *United States v. Busch*, 75 M.J. 87 (C.A.A.F. 2016). *United States v. Chero*, 75 M.J. 315 (C.A.A.F. 2016).

The error raised by Appellant in this remand is: *Whether the military judge violated the Ex Post Facto Clause,*[3] *and if not, did he err when he concluded Appellant's maximum punishment was 30 years confinement, total forfeitures and a dishonorable discharge?* We hold that the military judge did not violate the Ex Post Facto Clause. We further hold that, although he relied on an erroneous analysis of Rule for Courts-Martial (R.C.M.) 1003(c)(1), the military judge determined the correct maximum punishment. Finding no prejudice from the error, we affirm Appellant's sentence.

---

[1] Because the offense occurred on or about 25 November 2012, Appellant was charged under the current version of Article 120, UCMJ, 10 U.S.C. § 920, applicable to offenses committed on or after 28 June 2012.

[2] In his initial appeal, Appellant raised the following issues:

 I. Whether the military judge erred in providing findings instructions that included a reference to a sleeping person as someone who cannot consent?

 II. Whether the evidence is legally and factually insufficient?

 III. Whether the military judge abused his discretion in determining the maximum sentence for the offense?

 IV. Whether Appellant was deprived of his right to speedy trial in the appellate review process when action occurred 121 days after the court-martial was completed?

[3] U.S. CONST. art. I, § 9, cl. 3.

## I. BACKGROUND

This appeal is limited to the process by which the military judge determined the maximum sentence for Appellant's offense. In the National Defense Authorization Act for Fiscal Year 2012,[4] Congress revised the elements of what had, since 1 October 2007, been denoted as "aggravated sexual assault," in violation of Article 120(c), and redesignated it as simply "sexual assault" in violation of Article 120(b). The changes took effect on 28 June 2012 and applied to all offenses committed on or after that date.[5] When Appellant violated Article 120(b)(2) on or about 25 November 2012, the President had not yet promulgated a new maximum punishment for the revised offense. On 15 May 2013, a month prior to Appellant's trial, the President amended Part IV of the *Manual for Courts-Martial, United States* (2012 ed.) (2012 *MCM*), subparagraph 45.e., to set forth the maximum punishment for sexual assault to include a dishonorable discharge, forfeiture of all pay and allowances, and confinement for 30 years. Exec. Order No. 13,643, 78 Fed. Reg. 29,559, 29,606 (21 May 2013).

Prior to Appellant's trial, the Defense filed a motion requesting the military judge determine the maximum punishment. The Defense's position was somewhat muddled, however, as its motion referred to multiple specifications and several different Article 120 offenses (even though Appellant was facing a single charge and specification) and variously argued for the jurisdictional limit of a summary court-martial and for the maximum punishment applicable to assault consummated by a battery at a general court-martial: a bad-conduct discharge, total forfeitures, and confinement for six months.

The Government's position at trial was that when Congress, in 2012, amended the title and text of the 2007 version of "aggravated sexual assault," the revised offense of "sexual assault" remained listed in Part IV of the *MCM*. In the Government's view, since Congress did not specify an interim maximum punishment for "sexual assault" (as it had for the 2007 amendments[6] to Article 120), the modified offense retained the maximum punishment the President had established[7] for the 2007 version of "aggravated sexual assault": a dishonorable discharge, total forfeitures, and confinement for 30 years.

---

[4] Pub. L. No. 112-81, § 541(a)(3), 125 Stat. 1298, 1405 (2011).

[5] *Id.*, § 541(f), 125 Stat. at 1411.

[6] In the National Defense Authorization Act for Fiscal Year 2006, which substantially modified Article 120 to take effect on 1 October 2007, Congress established interim maximum punishments "[u]ntil the President otherwise provides pursuant to [Article 56, UCMJ]." Pub. L. No. 109-163, § 552(b), 119 Stat. 3136, 3263 (2006).

[7] Exec. Order No. 13,447, 72 Fed. Reg. 56,179, 56,214 (2 Oct. 2007).

The military judge analyzed the issue with reference to R.C.M. 1003(c)(1)(A) and agreed with the Government that Appellant's offense of "sexual assault" was an offense listed in Part IV of the *MCM*, but disagreed with the Government that Part IV provided for a maximum punishment for the offense. Finding no further guidance in R.C.M. 1003(c)(1)(A), the military judge determined that Article 18, UCMJ, 10 U.S.C. § 818, authorized the court-martial to impose a sentence up to and including life without parole, but acknowledged that Article 56, UCMJ, 10 U.S.C. § 856, constrained the court-martial to such limits as the President may prescribe for that offense. Noting that the 2007 Article 120 "aggravated sexual assault" offense was analogous to the 2012 Article 120 "sexual assault" offense, the military judge determined that Appellant was on notice that the 2007 maximum punishment applied to his offense: a dishonorable discharge, total forfeitures, and confinement for 30 years.

## II. DISCUSSION

### A. The Ex Post Facto Clause

"The Constitution forbids the passage of *ex post facto* laws, a category that includes [e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *Peugh v. United States,* 133 S. Ct. 2072, 2077–78 (2013) (alteration in original) (internal quotation marks and citation omitted). "We review questions of constitutional law de novo. If a constitutional error is found, whether it is harmless beyond a reasonable doubt is also reviewed de novo. An increase in the maximum sentence to confinement authorized for a crime would clearly be *ex post facto* legislation." *Busch*, 75 M.J. at 91 (citations and internal quotations omitted).

The Government contends that the Ex Post Facto Clause issue is outside the scope of the CAAF's remand. Appellant did not specifically raise the Ex Post Facto Clause in his original appeal to this court or to the CAAF. "While appellant is entitled to plenary review under Article 66, . . . he is only entitled to one such review." *United States v. Smith*, 41 M.J. 385, 386 (C.A.A.F. 1995). This court in acting on a remand "can only take action that conforms to the limitations and conditions prescribed by the remand." *United States v. Montesinos*, 28 M.J. 38, 44 (C.M.A. 1989). In this case, the CAAF's remand directed this court to reconsider the sentence in light of its *Busch* decision. The sole issue the CAAF granted in *Busch* was whether the Ex Post Facto Clause was violated.[8] Accordingly, we conclude that the Ex Post Facto Clause issue *is* within the scope of the CAAF's remand to this court.

The legal issues in *Busch* are similar to those in the instant case. The appellant there was convicted of an Article 120b offense (sexual abuse of a child)

---

[8] 75 M.J. at 89 n.2.

that, like the Article 120 offense in this case, was changed by Congress in 2012. Like Appellant here, Airman First Class Busch committed his offense after Congress amended the UCMJ but before the President promulgated the new maximum punishment in Exec. Order No 13,643. In *Busch*, the military judge referenced the executive order in his initial discussion with counsel but ultimately based his maximum punishment decision on R.C.M. 1003(c)(1)(B)(i).

In this case, the military judge similarly discussed the then recently released 2013 executive order. For example, in paragraph 12 of the military judge's written ruling, which he read into the record, he stated that "the Court need not decide as a matter of law whether the President's order applies retroactively." Nevertheless, the military judge, like the military judge in *Busch*, did not apply the 2013 executive order in determining the maximum punishment. He instead based it on what he ascertained to be a default sentence of confinement for life without the possibility of parole, which he then reduced, by invoking the rule of lenity and notice, to the punishment the President had established for the 2007 analogous offense of aggravated sexual assault.

As we conclude that the military judge did not rely on the 2013 Executive Order in determining the maximum punishment, we necessarily find that the military judge did not violate the Ex Post Facto Clause.[9]

## B. R.C.M. 1003(c)(1) – Offense-Based Maximum Punishments

The maximum punishment authorized for an offense is a question of law, which we review de novo. *United States v. Beaty*, 70 M.J. 39, 41 (C.A.A.F. 2011). The Constitution vests Congress with the power to "make Rules for the Government and Regulation of the land and naval Forces." U.S. CONST. art. I, § 8, cl. 14. Congress properly delegated to the President, as Commander in Chief of the Armed Forces, the authority to prescribe the Rules for Courts-Martial in Article 36, UCMJ, 10 U.S.C. § 836, and the authority to establish the maximum punishments for violations of the UCMJ, up to and including the death penalty, in Articles 18 and 56, UCMJ, 10 U.S.C. §§ 818, 856. *See Loving v. United*

---

[9] Had the military judge been correct that the maximum punishment for sexual assault was confinement for life without the possibility of parole and then applied the 2013 Executive Order to *reduce* that maximum punishment, such an application of an after-the-fact change to the maximum punishment would not have violated the Ex Post Facto Clause, as it would not have *increased* the potential penalty Appellant faced. *See, e.g.*, Exec. Order 12,473, 49 Fed. Reg. 17,152, 17,152 (23 Apr. 1984) ("*Provided further*, That the maximum punishment for an offense committed prior to August 1, 1984, for which a sentence is adjudged on or after August 1, 1984, if the maximum punishment authorized in this Manual is less than that previously authorized, the lesser maximum authorized punishment shall apply . . . .). *See generally Collins v. Youngblood*, 497 U.S. 37 (1990) (after-the-fact procedural change that reduces a sentence does not violate the Ex Post Facto Clause).

*States*, 517 U.S. 748, 768 (1996) (finding that Congress delegated to the President the authority to designate death penalty aggravating factors). The President has exercised his delegated authority in R.C.M. 1003:

> (c) *Limits on punishments.*
>
> > (1) *Based on offenses.*
> >
> > > (A) *Offenses listed in Part IV.*
> > >
> > > > (i) *Maximum punishment.* The maximum limits for the authorized punishments of confinement, forfeitures and punitive discharge (if any) are set forth for each offense listed in Part IV of [the *MCM*].
> > > >
> > > > . . . .
> > >
> > > (B) *Offenses not listed in Part IV.*
> > >
> > > > (i) *Included or related offenses.* For an offense not listed in Part IV of [the *MCM*] which is included in or closely related to an offense listed therein the maximum punishment shall be that of the offense listed; however if an offense not listed is included in a listed offense, and is closely related to another or is equally closely related to two or more listed offenses, the maximum punishment shall be the same as the least severe of the listed offenses.
> > > >
> > > > (ii) *Not included or related offenses.* An offense not listed in Part IV and not included in or closely related to any offense listed therein is punishable as authorized by the United States Code, or as authorized by the custom of the service. When the United States Code provides for confinement for a specified period or not more than a specified period the maximum punishment by court-martial shall include confinement for that period. If the period is 1 year or longer, the maximum punishment by court-martial also includes a dishonorable discharge and forfeiture of all pay and allowances; if 6 months or more, a bad-conduct discharge and forfeiture of all pay and allowances; if less than 6 months, forfeiture of two-thirds pay per month for the authorized period of confinement.

### 1. "Listed" or "Not Listed" in 2012 *MCM*, Part IV

The *MCM*—an executive document promulgated by the President pursuant to his Article 36 rule-making authority—consists of the Preamble (Part I), the Rules for Courts-Martial (Part II), the Military Rules of Evidence (Part III), the Punitive Articles (Part IV), and Nonjudicial Punishment Procedures (Part V). The President makes changes to the *MCM* by issuing an executive order.

*See, e.g.,* Exec. Order No. 12,473, 49 Fed. Reg. 17,152 (23 Apr. 1984) (promulgating the 1984 *MCM*). Published in conjunction with the *MCM* are a number of supplemental materials:

> The Department of Defense, in conjunction with the Department of Homeland Security, publishes supplementary materials to accompany the Manual for Courts-Martial. These materials consist of a Preface, a Table of Contents, Discussions, Appendices, and an Index. *These supplementary materials do not have the force of law.*
>
> . . . .
>
> The Department of Defense Joint Service Committee (JSC) on Military Justice reviews the Manual for Courts-Martial and proposes amendments to the Department of Defense (DoD) for consideration by the President on an annual basis.

Exec. Order No. 13,740, 81 Fed. Reg. 65,175, 65,176–77 (22 Sep. 2016) (emphasis added).

When the JSC proposes changes to the *MCM*, it prepares a proposed executive order (PEO). "The PEO *must include* the parts of the *MCM* that are promulgated by the President (Parts I-V) and *may include MCM* parts that do not require Presidential promulgation (Table of Contents, Discussions, Analyses, Appendices, and the Index)." *Standard Operating Procedures for the Joint Service Committee on Military Justice*, ¶ 6.1.1 (11 Mar. 2015) (emphasis added), *available at:* http://jsc.defense.gov/Military-Law/Sources-of-Military-Law/.

From 1984 through 1994, the *MCM* consisted of loose-leaf pages in a special 3-ring binder. Updates were made by page changes that were printed annually and distributed to military legal offices worldwide, which posted the pages to their *MCM* binders. Starting with the 1994 edition, the Department of Defense decided to replace the loose-leaf *MCM* with a fully bound version. The plan was to publish an updated bound version each year in keeping with the previous page update schedule and, according to plan, in 1995 a new bound edition was released. However, fiscal, personnel, and bureaucratic realities soon overcame this best-laid plan. The expected 1996 edition slipped to 1998 and the next edition did not reach the field until 2000. By the time the 2002 edition was released, military justice practitioners had largely settled into an anticipated every-other-year publication schedule; but then the next edition was not released until 2005. Another three years would lapse before the 2008 edition, which was seriously late to need, given the complete overhaul of Article 120 by the 2006 National Defense Authorization Act, which had taken effect in 2007.

Before the publication of the 2008 *MCM*, the President issued Executive Order No. 13,447, incorporating the 2007 amendments to Article 120 and completely revising Part IV, paragraph 45. 72 Fed. Reg. 56,179. The JSC created a new Appendix 27 in the 2008 *MCM* containing the previous version of paragraph 45, along with the following note:

> The punitive articles contained in this appendix were replaced or superseded by changes to Article 120, Uniform Code of Military Justice, contained in the National Defense Authorization Act for 2006. The effective date of the new Article 120 provision was 1 October 2007. Offenses occurring prior to this effective date must be charged under the former provisions of Article 120 or Article 134, which are listed below:

2008 *MCM*, app. 23 at A23-1.

The amount of work involved in drafting, internally coordinating among the military services, externally coordinating through multiple other executive agencies, and finally in securing presidential signature to an executive order should not be underestimated. That, coupled with the significant expense in publishing thousands of bound copies of a roughly 900 page book, placed huge strains on the JSC in carrying out its duties. By the time Congress revised Article 120 once again in 2012, the 2008 *MCM* had become so seriously outdated that the JSC chose not to wait for the President to issue an executive order before it published a new *MCM*. *See generally* Chris Kennebeck, *The Joint Service Committee on Military Justice (JSC) – Part I*, Nat'l Inst. of Military Justice Blog (19 Jun. 2012), http://www.caaflog.com/2012/06/19/the-joint-service-committee-on-military-justice-jsc -part-i/.

"The authority to revise the Manual, an Executive Order, is vested in a single individual, the President." *United States v. Tualla*, 52 M.J. 228, 231 (C.A.A.F. 2000). The JSC recognized the President's exclusive authority in Part IV, paragraph 60, of the 2012 *MCM*:

> (6) *Drafting specifications for Article 134 offenses.*
>
> (a) *In general.* ~~A specification alleging a violation of Article 134 need not expressly allege that the conduct was "a disorder or neglect," that it was "of a nature to bring discredit upon the armed forces," or that it constituted "a crime or offense not capital."~~ The same conduct may constitute a disorder or neglect to the prejudice of good order and discipline in the armed forces and at the same time be of a nature to bring discredit upon the armed forces.

**Discussion**

> The first sentence in paragraph 60c(6)(a) above is inaccurate, as
> set forth in *United States v. Fosler*, 70 M.J. 225 (C.A.A.F. 2011).
> *See also United States v. Ballan*, 71 M.J. 28 (C.A.A.F. 2012).
> ***Amending subparagraph (6)(a) requires an Executive Or-***
> ***der,*** hence the strikethrough font.

2012 *MCM*, pt IV, ¶ 60.c.(6)(a) & Discussion (strikeout in original; emphasis
added).

However, despite the JSC's recognition of its limited authority, on its own
initiative it purported to move the previous presidentially-approved language
from Part IV, paragraph 45 (Article 120–Rape, sexual assault, and other sexual
misconduct), to a new Appendix 28. The JSC also purportedly replaced the pre-
vious language with a new paragraph 45 (Article 120–Rape and sexual assault
generally) that contained a single subparagraph, 45.a., with the congression-
ally–revised UCMJ text, along with the following notes:

> Note: This statute applies to offenses committed on or after
> 28 June 2012. Previous versions of Article 120 are located as fol-
> lows: for offenses committed on or before 30 September 2007, *see*
> Appendix 27; for offenses committed during the period 1 October
> 2007 through 27 June 2012, *see* Appendix 28.

> a. *Text of statute.*

> [Text of 10 U.S.C. § 920.]

> Note: The subparagraphs that would normally address ele-
> ments, explanation, lesser included offenses, maximum punish-
> ments, and sample specifications are generated under the Pres-
> ident's authority to prescribe rules pursuant to Article 36. At the
> time of publishing this *MCM*, the President had not prescribed
> such rules for this version of Article 120. Practitioners should
> refer to the appropriate statutory language and, to the extent
> practicable, use Appendix 28 as a guide.

*2012 MCM*, pt IV, ¶ 45.

If, notwithstanding the absence of an executive order, the JSC was none-
theless authorized by the President to make the changes it did to Part IV of
the 2012 *MCM,* then the JSC's reference to Appendix 28 in its editorial notes
before and after the text of the statute in paragraph 45.a. had the effect of
incorporating by reference the 2007 version of Article 120 back into Part IV.
Since the publication of the 2008 *MCM*, sexual offenses committed prior to 1
October 2007 but tried thereafter have been prosecuted based on the version
of the UCMJ and *MCM* (including maximum punishments) in Appendix 27.

*See, e.g.*, *Ballan*, 71 M.J. at 30 nn.1, 2 (appellant properly tried, convicted, and sentenced in 2009 for offenses occurring under 2006 version of UCMJ and *MCM* located in Appendix 27 of the 2008 *MCM*); *United States v. Goings*, 72 M.J. 202 (C.A.A.F. 2013) (appellant properly tried, convicted, and sentenced after 1 October 2007 for offenses occurring prior to 1 October 2007 under the 2006 version of UCMJ and *MCM* in Appendix 27 of the 2008 *MCM*). The prior offenses continued to be prosecutable, even after Congress amended the UCMJ and the President amended the *MCM. See* 1 U.S.C. § 109 (2012):

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

*Cf. Busch*, 75 M.J. at 95 (Stucky, J. dissenting) ("Here the repealing act did not expressly provide for extinguishing the offense of indecent liberty with a child. . . . Thus, the offense still had the force of law for conduct committed before its repeal." (citing National Defense Authorization Act for Fiscal Year 2012)).

Unless the President expressly makes retroactive a reduction in the maximum punishment for an offense committed prior to the effective date of the President's action, the maximum punishment in effect at the time an offense was committed continues to apply.[10] *Contrast* Exec. Order No. 12,473, 49 Fed. Reg. 17,152 (23 Apr. 1984) ("[F]or offenses committed prior to August 1, 1984, for which a sentence is adjudged on or after August 1, 1984, if the maximum punishment authorized in this Manual is less than that previously authorized, the lesser maximum authorized punishment shall apply . . . ."); *and* Exec. Order No. 13,262, 67 Fed. Reg. 18,773, 18,779 (17 Apr. 2002) ("[F]or offenses committed prior to May 15, 2002, for which a sentence is adjudged on or after May 15, 2002, if the maximum punishment authorized in this Manual is less than that previously authorized, the lesser maximum authorized punishment shall apply."), *with* Exec. Order No. 13,140, 64 Fed. Reg. 55,115, 55,120 (12 Oct. 1999) ("The maximum punishment for an offense committed prior to 1 November 1999, shall not exceed the applicable maximum in effect at the time of the commission of such offense."). *But cf.* Exec. Order No. 13,447, 72 Fed. Reg. at

---

[10] The President could not make retroactive an *increase* in the maximum punishment without violating the *Ex Post Facto* Clause.

56,179 (amending *MCM* to incorporate 2007 changes to Article 120 without reference to modifying previously applicable maximum punishments).[11]

On 15 May 2013, when the President issued Exec. Order No. 13,643, promulgating the maximum punishments for the Article 120 offenses that had become effective on 28 June 2012, he did so acknowledging, *sub silentio*, the revised statutory text that the JSC had inserted into paragraph 45(a).

We therefore hold that, *as of 15 May 2013*, the President approved the JSC's previously ultra vires act in moving the 2007 version of Article 120 to Appendix 28 and authorized the listing of the 2012 version of Article 120 in Part IV of the *MCM*. Prior to 15 May 2013, however, the JSC's purported efforts to remove the 2007 version of Article 120 from Part IV of the *MCM* were without effect and the older version of Article 120 remained within Part IV. Accordingly, on or about 25 November 2012, when Appellant committed a violation of Article 120(b)(2) (2012), that offense was not yet listed in Part IV of the *MCM*.[12] Instead, the offense of aggravated sexual assault, a violation of Article 120(c)(2) (2007), remained listed in Part IV of the *MCM*.

### 2. R.C.M. 1003(c)(1)(B) – Offenses Not Listed in Part IV

Because Appellant's offense was not listed in Part IV, R.C.M. 1003(c)(1)(B) determines the maximum punishment. In applying that Rule, we must determine whether Appellant's offense is included or closely related to an offense that *is* listed in Part IV, in which case we look to R.C.M. 1003(c)(1)(B)(*i*); or not, in which case we look to R.C.M. 1003(c)(1)(B)(*ii*).

#### a. R.C.M. 1003(c)(1)(B)(i) – Included or related offenses

When Congress modified Article 120 in 2012, it based what became "sexual assault" on what had previously been designated as "aggravated sexual assault" in the 2007 version of Article 120. The analysis of Part IV, paragraph

[11] Since the publication of the 1984 *MCM*—and until the 2008 *MCM*—the President had always expressly indicated whether previous maximum punishments were retained or amended whenever he reduced a maximum punishment for an existing offense. He did not do so whenever an executive order established only new or newly revised offenses, and in 2005, in Exec. Order No. 13,387, 3 C.F.R. 178 (2006), he did not do so when he increased the maximum punishment for communicating a threat or hoax to conform with the federal criminal statute upon which the offense was based. However, in the case of new offenses and *increased* maximum punishments, the President could not have applied the changes retroactively without violating the Ex Post Facto Clause. The President has not specifically addressed the viability of previous maximum punishments in amendments to the 2008 *MCM* and thereafter.

[12] Even though the offense was not yet listed in Part IV (an executive document), it was a violation of the UCMJ (a statute) and Appellant was properly tried and convicted of a violation of Article 120(b)(2) (2012).

45, strongly supports the position that sexual assault (2012) is closely related to aggravated sexual assault (2007):

> **Sexual Assault:** The offense is renamed "Sexual Assault" from "Aggravated Sexual Assault" in the 2007 version because the term "aggravated" led to confusion due to the fact that there was no sexual act offense of lesser severity. The definition of sexual assault by causing bodily harm was clarified to note that any sexual act or contact without consent constitutes bodily harm. . . . The new statute also clarifies previously confusing language from the 2007 version regarding the state of a victim's consciousness by prohibiting a sexual act with a person who the accused knows or reasonably should know is sleeping, unconscious, or otherwise unaware that the sexual act is occurring.

*2012 MCM*, app. 23 at A23-15.

Comparing the elements of Appellant's offense with that of aggravated sexual assault (2007) lends further support to the notion that the charged offense is closely related to the 2007 offense. Both versions define the offense as the commission of a sexual act with or upon another person who is incapacitated, unaware, or incapable of consenting or decline participation in the sexual act. Both versions define "sexual act" as including "contact between the penis and the vulva, . . . contact involving the penis occurs upon penetration, however slight." *Compare* 10 U.S.C. § 920(t)(1)(A) (2007) *with* 10 U.S.C. § 920(g)(1)(A) (2012).[13]

We hold that for purposes of R.C.M. 1003(c)(1)(B), Appellant's offense is closely related to the offense of aggravated sexual assault, a violation of Article 120(c)(2) (2007), an offense listed in Part IV. The maximum punishment for a violation of Article 120(c)(2) (2007) was a dishonorable discharge, forfeiture of all pay and allowances, and confinement for 30 years. 2008 *MCM*, pt. IV, ¶ 45.f.(2) Consequently, in accordance with R.C.M. 1003(c)(1)(B)(i), the maximum punishment for Appellant's offense is a dishonorable discharge, forfeiture of all pay and allowances, and confinement for 30 years.

### b. R.C.M. 1003(c)(1)(B)(ii) – Not included or related offenses

Assuming, *arguendo*, that for purpose of R.C.M. 1003(c)(1), the JSC's act in moving paragraph 45 from Part IV in the 2008 *MCM* to Appendix 28 in the

---

[13] The 2012 UCMJ also added the penetration of the anus or mouth by the penis to the definition of "sexual act." However, Appellant was charged with committing a sexual act, to wit, sexual intercourse. The military judge defined "sexual act" as "the penetration, however slight, of the vulva by the penis." app. Ex. LV, p. 1; R. at 837.

2012 *MCM* both (1) removed aggravated sexual assault (2007) from Part IV and (2) did not incorporate it by reference back into Part IV, then aggravated sexual assault (2007) would no longer be "listed in Part IV." In that event, the maximum punishment for sexual assault (2012) would be determined by referring to the United States Code or the custom of the service. Under either scenario in the facts of this case, Appellant would not have been prejudiced. [14]

### *i) Punishable as authorized by the United States Code*

Unlike the offense in *Busch* (sexual abuse of a child), Article 120(b)(2), sexual assault upon a person who is unconscious or otherwise unaware, is analogous to an offense punishable by the United States Code, specifically, "sexual abuse," a violation of 18 U.S.C. § 2242(2). The statutory elements of Article 120(b)(2) (2012) and § 2242(2) are strikingly similar. Both statutes define "sexual act" as including contact between the penis and the vulva, penis and the anus, and penis and the mouth; contact involving the penis and the vulva or anus occurs upon penetration, however slight. *Compare* 18 U.S.C. § 920(b)(1) *with* 10 U.S.C. § 2246(2)(A)–(B). Both statutes require knowingly engaging in a sexual act with another person who is unconscious or otherwise unaware or incapable of appraising the nature of the sexual act. *Compare* 18 U.S.C. § 2242 *with* 10 U.S.C. § 920(b)(1). The similarities are by design. The 2007 amendments to Article 120, including aggravated sexual assault, were based on the Sexual Abuse Act of 1986, 18 U.S.C. §§ 2241–245. 2008 *MCM*, app. 23 at A23-15.

However, unlike the federal criminal statute, neither aggravated sexual assault (2007) nor sexual assault (2012) include the federal jurisdictional element. Nevertheless, the criminal conduct and mens rea set forth in Appellant's specification essentially describes the gravamen of the offense criminalized by § 2242(2). Moreover, the jurisdictional element of § 2242 is not applicable to the analogous offense in the military context and its absence in the military specification is irrelevant to determining the maximum punishment under R.C.M. 1003(c)(1)(B)(ii). *United States v. Leonard*, 64 M.J. 381, 385 (C.A.A.F. 2007) (Baker, J., concurring).

The maximum punishment authorized by 18 U.S.C. § 2242(2) is confinement for life. Applying R.C.M. 1003(c)(1)(B)(ii), the maximum punishment

---

[14] Given our holding and the absence of prejudice resulting from either alternative, we need not decide whether the federal criminal statute or the custom of the service would have taken precedence. However, in another case, it would seem that the more specific custom of the service should prevail over the more general analogous federal criminal statute under the canon of textual construction, *generalia specialibus non derogant*. ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 183 (2012).

would also include a dishonorable discharge and forfeiture of all pay and allowances. As this maximum punishment is greater than that determined by the military judge, a substantial right of Appellant would not have been prejudiced if his maximum punishment should have been as authorized by the United States Code.

### ii) Punishable as authorized by the custom of the service

The custom of the service would also dictate the same maximum punishment as was used in this case. The offense of aggravated sexual assault is a violation of Article 120(c)(2) (2007) for conduct committed during the four and a half year period from 1 October 2007 through 27 June 2012. The offense has been prosecuted by court-martial for the last nine years and, absent affirmative action by Congress or the President, will continue to be subject to military prosecution well into 2017, subject to the five year statute of limitations for aggravated sexual assault. Article 43, UCMJ, 10 U.S.C. § 843. While infrequent since Congress first authorized the President to prescribe maximum punishments for military offenses in the statute of September 27, 1890, the customs of the service have nevertheless formed the basis for determining the kind and degree of court-martial punishments. WILLIAM WINTHROP, MILITARY LAW AND PRECEDENTS 42 n.4 (Gov't Printing Office reprint 1920) (2d ed. 1896), *available at* https://www.loc.gov/rr/frd/Military_Law/ML_precedents.html.

Prior to 1 October 2007, knowingly committing sexual acts upon an unconscious or otherwise unaware person would have been chargeable as rape under the UCMJ and Articles of War and would carry with it a maximum punishment of a dishonorable discharge, forfeiture of all pay and allowances, confinement for life with or without the possibility of parole, and, if constitutionally permitted, death. 2005 *MCM*, app. 23, ¶ 45.e; National Forces Act of 1863, ch. 75, § 30, 12 Stat. 731, 736 (1863); WINTHROP at 666–67, 677–78. The nine years of court-martial practice since then in charging and penalizing the offense is a sufficient time to create a custom of the service as to the lesser authorized maximum punishment of a dishonorable discharge, forfeiture of all pay and allowances, confinement for 30 years. *Busch*, 75 M.J. at 93 (seven years is sufficient to create a custom of the service under R.C.M. 1003(c)(1)(B)(ii)).

### III. CONCLUSION

The military judge did not err when he determined that the maximum punishment was a dishonorable discharge, forfeiture of all pay and allowances, and confinement for 30 years, even though he used the wrong analysis to come to that conclusion. A proper application of R.C.M. 1003(c)(1)(B)(i) reaches the same result.

Upon further consideration in light of *Busch*, 75 M.J. 87, the sentence is correct in law and fact, and no error materially prejudicial to the substantial

rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved sentence is **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of Court